J-S34021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES A. BELLON, | |
| Appellant | No. 1472 WDA 2013 |

Appeal from the PCRA Order August 26, 2013
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0001272-2002

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:　　　　　　　**FILED AUGUST 07, 2014**

Appellant, Charles A. Bellon, appeals from the trial court's August 26, 2013 order denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant raises a multitude of issues, the majority of which involve allegations of ineffective assistance of his trial counsel. After careful review, we affirm.

We summarize the complicated and lengthy procedural history of this case as follows. On May 9, 2002, the Pennsylvania Office of Attorney General (OAG) filed a criminal complaint charging Appellant with 23 offenses, including: seventeen counts of possession with intent to deliver a controlled substance (PWID), two counts of corrupt organizations, and one count each of criminal conspiracy, criminal use of a communication facility, dealing in unlawful proceeds, and simple assault. Appellant's charges stemmed from his involvement in a large-scale drug dealing operation

conducted throughout Blair County and several surrounding counties from 1997 through 2001.

Appellant initially entered into a negotiated plea agreement whereby he pled guilty to seven counts of PWID in exchange for the Commonwealth's withdrawing all of the remaining charges and recommending a sentence of 20 to 40 years' incarceration. However, prior to his sentencing hearing, Appellant filed a motion to withdraw his plea. The trial court denied that motion and sentenced Appellant to 20 to 32 years' incarceration. On appeal to our Court, we concluded that Appellant's presentence motion to withdraw his plea should have been granted. Accordingly, we reversed his judgment of sentence and remanded for trial. *Commonwealth v. Bellon*, 864 A.2d 574 (Pa. Super. 2004) (unpublished memorandum).

Upon remand, Appellant proceeded to a jury trial and, on August 7, 2006, he was convicted of eleven counts of PWID, two counts of corrupt organizations, and one count each of conspiracy, criminal use of a communication facility, and dealing in unlawful proceeds. On April 5, 2007, Appellant was sentenced to an aggregate term of 31 to 62 years' incarceration, followed by 10 years' probation. On April 18, 2011, this Court affirmed his judgment of sentence. *Commonwealth v. Bellon*, 29 A.3d 836 (Pa. Super. 2011) (unpublished memorandum).

Appellant filed a *pro se* PCRA petition on September 30, 2011. Counsel was appointed and filed an amended petition on Appellant's behalf. New counsel subsequently entered his appearance and was granted leave to

- 2 -

file, and did file, two more amended petitions. After conducting an initial hearing to ascertain the precise issues Appellant was raising, the PCRA court conducted an evidentiary hearing on August 23, 2012. On August 26, 2012, the court issued an order and a 72-page opinion denying Appellant's petition.

Appellant filed a timely notice of appeal.[1] Herein, he presents seven issues, and eight sub-issues, for our review:

> I. Was trial counsel ineffective for not pursuing whether the statute of limitations was violated by alleging criminal conduct in all of 1997?
>
> II. [] Was trial counsel ineffective for not appropriately moving for dismissal of charges [when] the case was remanded for trial?
>
>> [a.] [] Was trial counsel ineffective for not moving for dismissal due to *res judicata*/procedural default and defect?
>>
>> [b.] [] Was trial counsel ineffective for not moving for dismissal due to the expired statute of limitations?
>
> III. Was trial counsel ineffective regarding witness Haralson?
>
>> [a.] [] Was trial counsel ineffective for not moving for a mistrial and dismissal of charges for the inappropriate handling of witness Haralson's grand jury testimony?
>>
>> [b.] [] Did the Commonwealth commit misconduct by not fully turning over the plea arrangement and agreement of witness Haralson?

_____

[1] The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement. Instead, it filed a document advising Appellant that in support of its denial of his petition, the court would rely on the established record (assumedly referencing, *inter alia*, its detailed August 26, 2012 opinion).

IV. [] Was trial counsel ineffective for not further pursuing the lack of a date certain as filed in the Commonwealth's answer to [] Appellant's bill of particulars?

V. [] Was trial counsel ineffective regarding the [Commonwealth's] expert witnesses[, Agent] Young and [Agent] Feather?

    [a.] [] Was trial counsel ineffective in allowing Agent Young to testify as an expert?

    [b.] [] Was trial counsel ineffective in allowing Agent Young to testify to [] Appellant's "confession"?

    [c.] [] Was trial counsel ineffective in allowing Agent Young to testify as an expert to the credibility of witnesses?

    [d.] [] Was trial counsel ineffective in not objecting to further testimony by Agent Feathers?

VI. [] Does newly pertinent case of [**Alleyne v. U.S.**, 133 S.Ct. 2151 (2013)] apply?

VII. [] Was trial counsel ineffective for not objecting to misconduct by the prosecutor?

Appellant's Brief at 75-76.

To begin we note that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable

- 4 -

adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

In Appellant's first issue, he avers that his trial counsel was ineffective for failing to challenge the criminal complaint and/or information on two grounds. First, Appellant claims that both the criminal complaint and criminal information violated the Pennsylvania Rules of Criminal Procedure by stating that Appellant's criminal conduct occurred "on or *between* 1997 and March, 2001[,]" rather than the required language of "on or *about*" a date within the applicable statute of limitations (SOL). *See* Pa.R.Crim.P. 504(4)(a) (requiring that where the specific date(s) of the defendant's offense(s) is not known, the criminal complaint must "state that it was committed on or about any date within the period of limitations[]"); Pa.R.Crim.P. 506(B)(3) (requiring that criminal information allege that the offense(s) was "committed on or about any date within the period fixed by

- 5 -

the [SOL]"). Appellant did not raise this claim in his petition;[2] consequently, it is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in lower court are waived and cannot be raised for the first time on appeal."); **see e.g. Commonwealth v. Rainey**, 928 A.2d 215, 226 (Pa. 2007) (stating that claims not raised in the PCRA petition are waived).

Appellant also contends that his trial counsel should have challenged the criminal complaint and information because it alleged criminal activity that occurred outside of the applicable five-year SOL.[3] Specifically, it appears that Appellant takes issue with count 1 in the criminal information, which stated that Appellant committed PWID "in 1997...." Criminal Information, 5/9/02, at 1 (unnumbered pages). Appellant maintains that because the criminal complaint was filed on May 9, 2002, any criminal conduct that occurred between January 1, 1997 and May 8, 1997 fell outside of the five-year SOL.[4] Therefore, he argues that his trial counsel should have "object[ed] to the [SOL]" or, at the very least, requested a jury instruction informing the jury that in order to convict Appellant, it must

_____

[2] Any reference to Appellant's PCRA "petition" includes his *pro se* petition, as well as the three counseled amendments thereto.

[3] The parties do not dispute that the applicable SOL is five years. **See** 42 Pa.C.S. § 5502(b)(2).

[4] Appellant claims that the criminal complaint was filed on May 2, 2002. The PCRA court, however, states that it was filed on May 9, 2002. Our review of the certified record supports the date used by the PCRA court.

conclude that his conduct occurred after May 8, 1997. Appellant's Brief at 84.

Initially, Appellant did not argue in his PCRA petition, or at the PCRA hearing, that counsel was ineffective for failing to request a jury instruction regarding the SOL issue.[5] Therefore, that argument is waived. **See** Pa.R.A.P. 302(a); **Rainey**, 928 A.2d at 226.

Instead, Appellant averred that trial counsel should have filed "a pretrial motion seeking dismissal of [the] PWID charges on grounds that they were barred by [the SOL]." Appellant's *Pro Se* PCRA Petition, 9/30/11, at 3. Appellant has failed to even argue, let alone prove, that he was prejudiced by counsel's alleged error in this regard. First, Appellant does not explain why the Commonwealth could not have simply amended the criminal information upon an objection by defense counsel. **See** Pa.R.Crim.P. 564 ("The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, *or the date charged*, provided the information as amended does not charge an additional or different offense.") (emphasis added).

Moreover, Appellant has failed to demonstrate that counsel's allegedly ineffective representation resulted in a violation of the precept "that 'criminal liability may not be imposed upon acts committed outside the limitations period.'" **Commonwealth v. Purcell**, 589 A.2d 217, 234 (Pa. Super. 1991)

_____

[5] Consequently, the PCRA court did not address this claim.

- 7 -

(citations omitted). Here, the PCRA court concluded that the Commonwealth's evidence demonstrated that Appellant's PWID offenses were committed, continuously, from *late* 1997 through March of 2001. **See** PCRA Court Opinion, 8/26/12, at 26-28. The court noted the testimony of Commonwealth witness Norman Ransom, who stated that in 1997 he and Appellant agreed to begin a drug-selling operation. N.T. Trial, 7/31/06, at 23. Ransom testified that he provided Appellant with "initial start-up" funding of $2,000 to purchase crack cocaine. **Id.** at 23-24. Ransom stated that this "first purchase of crack" cocaine took place "in *late* [19]97." **Id.** at 24 (emphasis added).

The record supports the PCRA court's conclusion that Ransom's testimony indicated that Appellant's drug-selling activity began at the end of 1997. While Appellant contends that the SOL issue should have been determined by the jury,[6] he does not explain why, despite Ransom's testimony, the jury would have concluded that his PWID offenses occurred between January 1, 1997 and May 8, 1997. Accordingly, he has not proven that he was prejudiced by counsel's purported error in this regard. **See Commonwealth v. Spotz**, 84 A.3d 294, 312 (Pa. 2014) ("To demonstrate prejudice, the petitioner must show that 'there is a reasonable probability

_____

[6] **See** Appellant's Brief at 83 (citing **Commonwealth v. Bethlehem**, 570 A.2d 563, 568 (Pa. Super. 1989) ("Under Pennsylvania law, the Commonwealth is required to prove as an element of every criminal offense that an applicable statute of limitations did not bar prosecution.") (citation omitted).

that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'") (citation omitted).

In Appellant's second issue (which he divides into two sub-parts), he alleges that his trial counsel was ineffective for not moving to dismiss the charges that were reinstated after he withdrew his guilty plea. To reiterate, Appellant initially pled guilty in this case and, after the trial court denied his presentence motion to withdraw his guilty plea, he was sentenced on the seven counts of PWID to which he had pled guilty. In the court's October 20, 2003 sentencing order, it stated that the remaining 16 counts were "*nolle prossed* and dismissed." Sentencing Order, 10/20/03, at 7. Appellant appealed to this Court and, upon concluding that the trial court should have allowed Appellant to withdraw his plea, we vacated Appellant's judgment of sentence and remanded for trial. Upon remand, the Commonwealth reinstated all 16 charges that had been "*nolle prossed* and dismissed" by the court's October 20, 2003 sentencing order.

Appellant filed a pretrial motion challenging the Commonwealth's ability to reinstate those 16 charges. The trial court concluded that because the sentencing order dismissing those charges had been vacated by this Court on direct appeal, "the status of the [criminal] [i]nformation reverted to its status prior to the entry of [Appellant's] [g]uilty [p]lea." Trial Court Opinion, 2/7/06, at 10. In other words, the trial court concluded that the Commonwealth could prosecute Appellant for all 23 counts originally charged.

Following his trial and conviction, Appellant once again appealed to this Court, arguing that the trial court erred in allowing the Commonwealth to reinstate the 16 charges that had been *nolle prossed* and dismissed. ***Commonwealth v. Bellon***, 1213 WDA 2009, unpublished memorandum at 4 (Pa. Super. filed April 18, 2011) (citation omitted). In rejecting this claim, our Court stated, in pertinent part:

> We find Appellant's position perplexing. Under Appellant's logic, a defendant could plead guilty in exchange for the Commonwealth['s] withdrawing certain charges, rescind his guilty plea, and then prevent the Commonwealth from reinstituting the charges that had been withdrawn as part of plea negotiations. This position is untenable. A plea agreement is exactly that, an agreement. Once the defendant withdraws the agreement, the parties stand in the same position as they did before its entry. **Thus, all of the charges against Appellant could lawfully be prosecuted after he withdrew his guilty plea. *See Commonwealth v. Rose***, 820 A.2d 164 (Pa. Super. 2003). To hold otherwise would result in defendants gaming the system by pleading guilty and withdrawing their pleas by proclaiming innocence solely to reduce the number of charges.

***Id.*** at 12 (emphasis added).

In Appellant's PCRA petition, and on appeal, he again challenges the reinstatement of the at-issue charges. However, this time, Appellant frames the issue as an ineffective assistance of counsel claim. Specifically, he argues that counsel should have objected to the reinstatement of the charges on the grounds that it violated the doctrine of *res judicata*. He also maintains that because the Commonwealth did not require him to "waive a Statute of Limitations defense" prior to entering his guilty plea, "numerous

- 10 -

charges could not have survived to be prosecuted against [] Appellant."
Appellant's Brief at 84, 86, 87.

We decline to delve into the specifics of Appellant's claims, as "the law
of the case" doctrine binds us to conclude that Appellant was lawfully
prosecuted on all of the original 23 counts with which he was charged.
"[T]he doctrine of 'the law of the case' is that, when an appellate court has
considered and decided a question submitted to it on appeal, it will not upon
a subsequent appeal on another phase of the same case, reverse its
previous ruling even though convinced that it was erroneous…." ***Albright v.
Wella Corp.***, 359 A.2d 460, 463 n.4 (Pa. Super. 1976) (citing ***Burke v.
Pittsburgh Limestone Corp.***, 100 A.2d 595, 598 (Pa. 1953)).

Here, as quoted above, this Court previously concluded that "all of the
charges against Appellant could lawfully be prosecuted after he withdrew his
guilty plea." ***Bellon***, 1213 WDA 2009, at 12. Not only do we agree with
that determination and the rationale underlying it, but even if we did not,
the law of the case doctrine compels us to adhere to it. The fact that
Appellant attempts to once again challenge the reinstatement of the charges
on slightly different grounds does not permit this Court to reach a different
result.[7] Accordingly, Appellant's second issue, and two sub-parts thereof,
are meritless.

_____

[7] We note that the PCRA court reached the same conclusion, finding that it
was "bound by the law in the case based on the Superior Court's judgment
that all of the charges could be 'lawfully prosecuted[.]'" PCRA Court Opinion
at 33.

Next, Appellant contends that his trial counsel was ineffective based on two ostensible errors regarding the testimony of Commonwealth witness Charles Haralson. In regard to his first complaint, Appellant essentially contends that the Commonwealth discovered that Mr. Haralson committed perjury during his testimony before a grand jury in this case, yet the Commonwealth "took no steps whatsoever other than to casually bring it to [t]rial [c]ounsel's attention and address it during trial." Appellant's Brief at 89. In short, it seems Appellant takes issue with the Commonwealth's method of notifying his counsel of Mr. Haralson's perjury, yet he does not specify precisely what the Commonwealth was required to do differently. Moreover, despite conceding that during cross-examination his counsel "artfully and appropriately attacked Mr. Haralson" regarding his perjury, Appellant contends that his trial counsel acted ineffectively by not objecting to the admission of Mr. Haralson's testimony and/or seeking a mistrial. *Id.* at 88-89.

Appellant's claims are meritless. First,

a claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor.

- 12 -

*Commonwealth v. Koehler*, 36 A.3d 121, 144 (Pa. 2012) (citations and internal quotation marks omitted).

Here, Appellant does not prove that the Commonwealth's conduct in revealing Mr. Haralson's grand jury perjury "violated a constitutionally or statutorily protected right…." *Id.* During the prosecutor's direct examination of Mr. Haralson, she revealed the issue of his perjured grand jury testimony, explicitly asking Mr. Haralson if he had testified truthfully. N.T. Trial, 8/3/0, at 10. He stated that he had not. *Id.* The prosecutor then asked if he understood "that [he was] under oath when [he] gave that testimony," and if he knew "that it is a crime to tell something that isn't true under oath[.]" *Id.* at 10-11. Mr. Haralson responded that he did understand those facts. *Id.* at 10-11.

Then, on cross-examination by Appellant's counsel, Mr. Haralson again acknowledged that he lied during his grand jury testimony. *Id.* at 21. Appellant's trial counsel asked Mr. Haralson if the Commonwealth had charged him with perjury, to which he replied, "No." *Id.* at 22. Counsel then questioned Mr. Haralson as follows:

[Trial Counsel]: So why should the jury believe you now when you already admitted that you lied under oath?

[Mr. Haralson]: That's up to them. That's their decision. I know I'm speaking the truth.

[Trial Counsel]: Alright. But the grand jury thought you were speaking the truth [t]here, correct?

[Mr. Haralson]: Yes.

[Trial Counsel]: And you weren't?

- 13 -

[Mr. Haralson]: Yes.

[Trial Counsel]: Alright.  But now after you're sentenced to five to ten, now you're coming in with all truth?

[Mr. Haralson]: Yes.

*Id.* at 22.

Based on this evidence, the PCRA court concluded that "the record reflects the circumstances relating to [Mr. Haralson's] grand jury testimony … were fully disclosed and developed in front of the jury."  PCRA Court Opinion at 40.  We agree.  Consequently, we conclude that trial counsel was not ineffective for failing to challenge the prosecutor's revelation and her handling of Mr. Haralson's perjured grand jury testimony.

Additionally, the record confirms that counsel had a reasonable basis for not doing so.  For instance, when asked at the PCRA hearing whether it is "helpful to the defense for the Commonwealth to put a guy who commits perjury on the stand," counsel replied, "I believe so, especially when we can prove it like we did."  N.T. PCRA Hearing, 8/23/12, at 27.  Moreover, the following exchange occurred between the Commonwealth and Appellant's trial counsel:

[The Commonwealth]: And you also asked a series of questions to Mr. Haralson about him lying to the grand jury in order to discredit him before the jury?

[Trial Counsel]: Yes.

[The Commonwealth]: So, even though you may not have filed a motion to preclude Mr. Haralson as a witness, your strategy was to impeach him because he had [] lied to the grand jury …?

- 14 -

> [Trial Counsel]: Correct, because that fit our whole defense scheme which was prosecutorial misconduct and [the] lengths that they would go to prosecute [Appellant].

*Id.* at 41-42. Based on counsel's testimony, we conclude that his strategy in not seeking to preclude Mr. Haralson's testimony was reasonable and designed to bolster Appellant's overall defense. Accordingly, Appellant's claim of ineffectiveness fails on this basis, as well.

In Appellant's second complaint regarding this witness, Appellant claims that the Commonwealth violated *Brady v. Maryland*, 83 S.Ct. 1194 (1963), by not disclosing that a "plea agreement with witness Haralson was much more significant than originally disclosed." Appellant's Brief at 90. The testimony presented at the PCRA hearing further elucidates Appellant's *Brady* claim. There, Mr. Haralson stated that in exchange for testifying at Appellant's trial, he received a reduced sentence on federal charges to which he subsequently pled guilty. N.T. PCRA Hearing, 8/23/12, at 6-7. Specifically, Mr. Haralson and Appellant's PCRA counsel had the following exchange:

> [PCRA Counsel]: Okay. Now, I guess the key question, Mr. Haralson, is when did you know that your cooperation against [Appellant] was going to aid you in your federal plea?
>
> [Mr. Haralson]: Before --- before trial, I was told that whatever needed to be done was gonna be done to help me out.

*Id.* at 6. Mr. Haralson clarified that these statements were made by both Assistant District Attorney Jackie Bernard (ADA Bernard) and Pennsylvania Office of Attorney General Narcotics Agent Randy Feathers (Agent Feathers). *Id.* at 11.

- 15 -

However, on cross-examination, it was revealed that the federal charges against Mr. Haralson had not even been *filed* until November 15, 2006, several months after Mr. Haralson testified against Appellant in late July and early August of 2006. *Id.* at 10. Mr. Haralson was also asked on cross-examination if, "at [his] federal sentencing[] [on] January 11, 2008, [he] … informed the Federal Court that [he] had a specific agreement, understanding or promise with the Commonwealth where the Commonwealth promised to [him] that they would aid [him] in [his] … federal case if [he] testified at [Appellant's] trial…[.]" *Id.* at 14. Mr. Haralson replied, "I was never asked[,]" and then later stated that his purported agreement with the Commonwealth "was never an issue that was brought up[]" at his federal sentencing proceeding. *Id.* at 14-15.

ADA Bernard testified at the PCRA hearing that prior to Appellant's trial, she disclosed to defense counsel that the Commonwealth had entered into three plea agreements with Mr. Haralson in state court. *Id.* However, she repeatedly maintained that she never entered into an agreement with Mr. Haralson, nor made any promises to him, regarding his federal case. *Id.* at 103, 106. Indeed, ADA Bernard testified that she did not recall even *knowing* about Mr. Haralson's yet to be filed federal charges prior to his testifying at Appellant's trial. *Id.* at 104. She also stated that there was no indication in her file "that there was ever any discussion with Charles Haralson about anything related to any federal charges." *Id.*

- 16 -

ADA Bernard did acknowledge, however, that a "portion of the federal sentencing transcript for [Mr.] Haralson [] indicates that there was communication made from [her] and/or [Assistant District Attorney] Dave Gorman concerning Mr. Haralson's testimony at [Appellant's] trial…." *Id.* at 103. When asked to explain further, ADA Bernard stated:

[ADA Bernard]: Well, the [federal] case against Mr. Haralson was not even brought until after the trial for [Appellant]. I do recall [ADA] Gorman asking me if Haralson had testified in [Appellant's] trial and whether or not he testified truthfully. I did relay back to him that he had. He apparently had a phone conversation or a phone call, I should say, from John Valkovci, who was inquiring into Charles Haralson's cooperation for [Appellant's] case but my recollection is that all occurred after [Appellant's] trial.

*Id.* at 104.

ADA Gorman also took the stand at the PCRA hearing. He testified that he could not recall having a conversation with federal authorities about Mr. Haralson's cooperation in Appellant's case. *Id.* at 96. However, he testified that it was possible that federal authorities had contacted him in this regard and he simply relayed to them that Mr. Haralson had testified truthfully in Appellant's case. *Id.* at 96.

Additionally, Agent Feathers testified at Appellant's PCRA hearing. He stated that he never entered into any agreement or made any promise to Mr. Haralson regarding his federal case. *Id.* at 55-56. Indeed, he testified: "I've been doing this for thirty years and there's no way that I ever did or ever would tell somebody that I could handle something another agency was

- 17 -

doing. In this case it wasn't our agency that was involved in any of that type of thing so [there is] no way I would do that." *Id.* at 56. Agent Feathers also stated that he never heard ADA Bernard make any promises to Mr. Haralson regarding his federal case. *Id.* at 56.

Based on this evidence, we ascertain no abuse of discretion in the PCRA court's denial of Appellant's *Brady* claim. Initially, Appellant does not explain when he discovered the purported deal with Mr. Haralson in order to satisfy his burden of proving that he could not have raised this claim on direct appeal. *See* 42 Pa.C.S. § 9543(a)(3) (stating that to be eligible for PCRA relief, a petitioner must plead and prove "[t]hat the allegation of error has not been previously litigated or waived"); 42 Pa.C.S. 9544(b) (stating "an issue is waived if petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"). Consequently, this issue is waived.

Nevertheless, based on the evidence presented at the PCRA hearing, we would conclude this *Brady* assertion is meritless. Even if ADA Bernard and/or Agent Feathers suggested to Mr. Haralson that they would make his cooperation in Appellant's case known in any future criminal proceedings, such a suggestion did not constitute an agreement or promise that had to be disclosed under *Brady*. *See Commonwealth v. Burkhardt*, 833 A.2d 233, 243-44 (Pa. Super. 2003) (finding district attorney's (D.A.) indication "that truthful testimony and cooperation would be considered in future proceedings" was not required to be disclosed under *Brady*, as such a

statement by the D.A. "falls far short of any promise of leniency and represents nothing more than the type of general response that D.A.'s have been uttering for decades"). Our conclusion in this regard is not negated by the fact that after Appellant's trial and prior to Mr. Haralson's federal sentencing hearing, ADAs Bernard and Gorman answered honestly when asked by federal officials if Mr. Haralson had testified truthfully at Appellant's trial. *See Commonwealth v. Russell*, 665 A.2d 1239, 1244 (Pa. Super. 1995) (concluding that the fact that a homicide detective responded to inquiries by a federal prosecutor regarding a witness' cooperation in the appellant's case did not constitute an "agreement" that had to be disclosed by the Commonwealth). Accordingly, Appellant's **Brady** claim would fail even if it were not waived.

In Appellant's next issue, he maintains that his trial counsel was ineffective for "not asking for greater specificity" after the Commonwealth responded to a request for a Bill of Particulars filed by Appellant. In Appellant's pretrial "Request for Bill of Particulars *Nunc Pro Tunc*," he contended that the criminal information was insufficiently specific regarding the dates of his alleged offenses. Specifically, Appellant took issue with the fact that for many of his offenses, the criminal information simply stated the year in which the crime occurred. For the remaining offenses, the information only specified a time-frame of several months of a particular year, which Appellant also claimed was inadequate. Accordingly, Appellant requested that the court order the Commonwealth to file a Bill of Particulars,

providing more specific dates of his alleged crimes. The court ultimately granted Appellant's motion and the Commonwealth filed a Bill of Particulars. Therein, the Commonwealth again stated the year in which Appellant's crimes were committed, and added that his offenses occurred "on a regular daily basis." **See** Commonwealth's Supplemental Answer to Defendant's Request for Bill of Particulars, 2/27/06, at 1.

Appellant now contends that "[t]he language 'on a regular basis' is too vague an[d] unrefined. It could mean daily, monthly, hourly, etc." Appellant's Brief at 93. Consequently, Appellant claims that counsel should have again challenged the lack of specificity in the Commonwealth's Bill of Particulars. He avers that he was prejudiced by counsel's failure in this regard because it "vastly reduc[ed] the defenses available to him[,]" namely, an alibi defense for the year of 1997.

Initially, it appears that Appellant misreads the Commonwealth's Bill of Particulars – that document did not state "on a regular basis," as Appellant contends; instead, it stated "on a regular *daily* basis." In any event, the PCRA court concluded that the language "on a regular basis" was sufficient, considering the circumstances of Appellant's offenses. The court explained:

> Having heard the evidence at trial, the Court understands the Commonwealth's predicament in responding to the Bill of Particulars. Indeed, based on the testimony of Norman Ransom, [Appellant] possessed cocaine literally every day he was in Blair County with the intent to deliver it to various individuals – including passing out free samples to encourage customers. Given the continuous nature of [Appellant's] conduct and the testimony of Norman Ransom, the Commonwealth's response

was entirely consistent with the evidence which they presented. The testimony of Norman Ransom was supported by Theresa Rickabaugh Givens who described specific purchases from [Appellant] which she testified commenced in 1997 and then extended into calendar year 1998 and beyond. … We qualified this at [Appellant's] sentencing when we offered the following:

> You know I did some calculating when I was going through the transcript in this matter if I gave you a 30 year sentence there would be – I would not be giving you a one day per crime sentence. In other words, if you take 30 years and you multiply it by 365 [days,] more crimes were committed in your name or by you than there are days in 30 years and you were central to every one of those crimes.

(**See** transcript of Sentencing Proceeding April 5, 2007, Pages[]48-49).

PCRA Court Opinion at 34-35.

We ascertain no abuse of discretion in the PCRA court's rationale, especially considering that the Commonwealth's Bill of Particulars stated that Appellant's offenses occurred "on a regular *daily* basis." Consequently, trial counsel was not ineffective for failing to seek further clarification of the dates of Appellant's offenses.

Furthermore, even if this claim of ineffectiveness had arguable merit, Appellant has not demonstrated that he was prejudiced. Appellant avers that his defense was hampered by the lack of specificity in the criminal information and the Commonwealth's Bill of Particulars because he wanted to present an alibi defense for the PWID offense committed in 1997. However, at the PCRA hearing, Appellant stated that he told trial counsel he was not present in Blair County *at any time* in 1997; instead, he told counsel he arrived in Blair County in March of 1998. N.T. PCRA Hearing at 149. As

- 21 -

the Commonwealth points out, based on Appellant's PCRA testimony, "a more specific averment as to when in 1997 he committed PWID would not have affected an alibi defense for Count 1." Commonwealth's Brief at 39. The Commonwealth's logic is convincing. Accordingly, even if this claim of ineffectiveness had arguable merit, we would conclude that Appellant has not demonstrated that he was prejudiced by counsel's alleged error.

Appellant's next issue (which contains three sub-issues) involves trial counsel's response to the testimony of OAG Narcotics Agents Randy Feathers and Norman Young. Appellant's first several arguments concern the testimony of Agent Young regarding

> an encounter [the agent] had with Appellant at a basketball court in Altoona. Agent Young approached [] Appellant about a large missing sum of police money and angrily confronted [] Appellant. [] Appellant indicated he felt he had to respond to questioning and told Agent Young he was, "no longer in the game." This evidence amounted to a confession that [] Appellant had been involved in the business of selling narcotics.

Appellant's Brief at 95. Appellant essentially maintains that his trial counsel was ineffective for not seeking to suppress Agent Young's testimony regarding Appellant's "confession." *Id.* at 95-96.

Appellant's ineffectiveness claim is meritless. Other than asserting a bald claim that a suppression motion would likely have been granted, Appellant offers no explanation as to *why* the court would have suppressed Agent Young's testimony. In other words, he does not state on what ground(s) trial counsel should have moved to suppress his "confession" to

- 22 -

Agent Young. Therefore, Appellant has failed to prove his ineffectiveness claim has arguable merit. *See Commonwealth v. Cope*, 518 A.2d 819, 820 (Pa. Super. 1986) ("Counsel will not be deemed ineffective for failing to assert a meritless claim.").

In any event, we would also agree with the PCRA court's determination that trial counsel had a reasonable basis for not seeking to exclude Agent Young's testimony. At the PCRA hearing, counsel explained his strategy for not filing a motion to suppress this evidence as follows:

> [Trial Counsel]: The biggest reason would probably be that obviously since it was outside; [Appellant] was not in custody so obviously *Miranda*, even though I disagree with it --- the rulings on most of them --- but you have to be in custody; he has to be subject to custodial interrogation. Obviously, the argument between [Appellant] and [Agent] Young over ten thousand dollars ($10,000) fit neither of those criteria and that conversation, again, I think was important because it fit our defense that that was one of the reasons they were so gung-ho to convict [Appellant] at all costs.

N.T. PCRA Hearing at 44.

> From this testimony, the PCRA court concluded:

> Having reviewed the trial transcript we see the merit of [trial counsel's] testimony that any suppression motion was not a good tactic as the evidence was (arguably) valuable to the Defense at trial. Indeed, our review suggests this was the clearest evidence the Defense had during the entire proceeding that the Commonwealth was setting [Appellant] up and was angry with him.

> Accordingly, since the strategy [trial counsel] adopted (included) admission of the conversation/argument between [Appellant] and Agent Young[, Appellant's] response that "I'm out of the business" … was simply the evidentiary price that had to be paid to get the total confrontation and Agent Young's anger at

- 23 -

[Appellant] in front of the jury. In that pivotal respect, the Defense had to choose. The choice [trial counsel] made was clearly legitimate as he explained it and [it was] consistent (in fact important) to the Defense strategy at trial.

PCRA Court Opinion at 46-47. We ascertain no error in the PCRA court's determination. Consequently, even if Appellant had satisfied the arguable merit prong of the ineffectiveness test, we would conclude that counsel had a reasonable basis for not filing a motion to suppress Agent Young's testimony.

Appellant also challenges trial counsel's representation on the basis that counsel failed to object to Agent Young's being qualified as an expert witness. Appellant maintains that Agent Young's testimony did not "rise to the level of specialization to require expert testimony[;]" instead, he claims the agent offered testimony that "was very basic and factual in nature." Appellant's Brief at 97. Appellant argues that Agent Young's being improperly qualified as an expert witness resulted in "his testimony [being] given far greater weight than it should have had[,]" especially in light of the trial court's instruction to the jury "that it could give that evidence greater weight [because] of the expertise of its source." *Id.* at 98-99. Appellant also takes issue with Agent Young's testimony as an expert witness because he claims the Agent gave "four separate opinions on the testimony of other witnesses that testified during the trial." *Id.* Appellant avers that "[e]ven with the expert qualification, it would be plain error for an expert to bolster the credibility of other lay witnesses, yet this was exactly what was permitted to occur." *Id.* at 97-98.

- 24 -

Initially, Appellant's claim that counsel should have objected to Agent Young's testimony because he improperly offered an opinion regarding the credibility of other witnesses is waived for two reasons. First, Appellant did not raise this claim in his PCRA petition. *See* Pa.R.A.P. 302(a); ***Rainey***, 928 A.2d at 226. Second, Appellant provides no citation to where in the record this ostensibly improper testimony by the agent occurred. Indeed, Appellant does not even name the four witnesses on whose credibility Agent Young allegedly commented. Consequently, this specific assertion is waived. ***See*** Pa.R.A.P. 302(a); ***Commonwealth v. Berry***, 877 A.2d 479, 485 (Pa. Super. 2005) ("[I]ssues that are not supported by citations to the record and to pertinent legal authority are waived.").

In regard to Appellant's contention that counsel should have objected to Agent Young's admission as an expert because the agent "did not present any significant expert testimony[,]" we conclude that this claim lacks arguable merit. This Court recently stated that Pennsylvania Rules of Evidence "do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and an expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder." ***Commonwealth v. Huggins***, 68 A.3d 962, 967 (Pa. Super. 2013), *appeal denied*, 80 A.3d 775 (Pa. 2013).

Furthermore, Appellant did not establish that counsel made an unreasonable decision not to object to Agent Young's testimony on this basis. At the PCRA hearing, Appellant only questioned trial counsel

regarding whether counsel should have objected to Agent Young's expert testimony on the basis that the Commonwealth failed to disclose that Agent Young would be offered as an expert witness. *See* N.T. PCRA Hearing at 30. As the Commonwealth points out, Appellant "did not elicit testimony at the PCRA hearing concerning whether trial counsel should have objected to [Agent] Young's testimony because he was qualified as a[n] [expert] witness but was only testifying as a fact witness." Commonwealth's Brief at 46. The Commonwealth also emphasizes that "the PCRA court's thorough opinion and order did not appear to address this issue." *Id.* The record confirms the accuracy of the Commonwealth's assertions. Consequently, Appellant has not met his burden of pleading and proving counsel's ineffectiveness in this regard.

Next, Appellant challenges trial counsel's representation regarding the testimony of Agent Feathers. Appellant's argument involves the following portion of Agent Feathers' direct examination:

> [The Commonwealth]: So, do you think it's very unusual that an organization of this type as you've testified to earlier that you wouldn't have direct buys from … [Appellant]?
>
> [Agent Feathers]: No, in my experience with corrupt organizations and complex cases, often times we don't have direct buys from the leaders.
>
> [The Commonwealth]: And do you have an expert opinion on the role [Appellant] played in this organization?
>
> [Agent Feathers]: Yes, ma'am, I do.
>
> [The Commonwealth]: And what is that?

[Defense Counsel]: Judge, I'm going to object.  I don't believe it's his opinion that's relevant today.

[The Commonwealth]: Judge, he's been qualified as an expert. He's a supervising agent.

[Defense Counsel]: That's a determination for the fact finder.

[The Court]: At this point it's a comment on the evidence awfully late in the game. This is the last Commonwealth witness.  I'm going to sustain the objection.  Another question, [ADA] Bernard.

[The Commonwealth]: Thank you, your Honor.  You said that your interest was peaked [*sic*] once you spoke to Mr. Butler and you found out the amounts of money that Mr. Butler owed [Appellant] in this case and [defense counsel] wouldn't let you finish your answer but I'm going to let you finish your answer. Why was your interest peaked [*sic*]?

[Agent Feathers]: Well, this individual had owed [Appellant] fifty-six hundred dollars ($5,600) on a front.  To me as an expert and a person that's been in the field for a long time, that indicated to me that Mr. Butler was himself somewhat of a major dealer and he was going to his source, which I believed was a major dealer, [Appellant], just due to the amount of money involved.

N.T. Trial, 8/4/06, at 263-64.

Appellant argues that trial counsel should have renewed his objection when Agent Feathers testified that he was "a major dealer…."  *Id.* at 264.

Appellant maintains that

had this been a minor detail or low evidentiary worth question, the inaction [of counsel] may have been excusable; however, this question was of significant evidentiary value.  Allowing Appellant to be labeled by an expert witness as a major drug deal[er] near the end of the [Commonwealth's] case for all intents and purposes handed the [Commonwealth] convictions signed, sealed and delivered.

Appellant's Brief at 100.

- 27 -

Appellant provides no discussion of the basis on which counsel should have objected to Agent Feathers' testimony. He also offers no analysis of why such an objection would likely have been sustained. Indeed, the PCRA court concluded that an objection to the above-quoted testimony by Agent Feathers "would have been baseless." PCRA Court's Opinion at 62. The court reasoned, in relevant part:

> [Agent Feathers] answered the question he was asked as to why his interest was piqued. In his response, he indicated that both Mr. Butler and [Appellant] appeared (due to the amount of money involved) as major dealers. At the conclusion of a seven day trial there was no nuclear rocket science in that opinion by Agent Feathers....

PCRA Court Opinion at 62-63. Because Appellant offers no argument contradicting the PCRA court's conclusion that an objection would have been meritless, we conclude that Appellant has failed to prove that his ineffectiveness claim regarding Agent Feathers' testimony has arguable merit. *See Cope*, 518 A.2d at 820.

Appellant's next issue (numbered VI, above), does not involve a claim of trial counsel ineffectiveness. Instead, Appellant attacks the legality of his sentence under the Supreme Court of the United States' recent decision in *Alleyne*, 133 S.Ct. 2151. In that case, the Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2155. In this case, Appellant emphasizes that he "was undoubtedly sentenced to multiple mandatory sentence enhancements without the benefit of a

determination by a jury that sufficient evidence was presented." Appellant's Brief at 100-101. Consequently, he maintains that under *Alleyne*, his mandatory sentences must be vacated as illegal.

We disagree. *Alleyne* was decided on June 17, 2013, nearly two years after Appellant's judgment of sentence became final. As the Supreme Court has explained, "When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review. As to convictions that are already final, however the rule applies only in limited circumstances." *Schriro v. Summerlin*, 124 S.Ct. 2519, 2522 (2004). In basic terms, those circumstances are where the new rule is "substantive," or where the rule constitutes a "watershed rule[] of criminal procedure…." *Id.* at 2522-2523.

While Appellant acknowledges that, "Pennsylvania Courts have not addressed the retroactivity of *Alleyne*" to date, he makes no argument that this Court should undertake such an analysis. Instead, he asserts that we should apply *Alleyne* to his case because he

> has continually remained in the appellate process since his conviction. This includes direct appeals and the instant PCRA appeal. One of the issues challenged both at the direct appeal level and in the instant PCRA was the aggregation of weights [of the drugs] and the resulting application of mandatory sentences. Since day one of the appeals process[,] [] Appellant has contended that what eventually became the *Alleyne* decision was the appropriate rule of law.

Appellant's Brief at 101.

This argument is unconvincing. Appellant's judgment of sentence became final prior to the decision in *Alleyne*; therefore, his case was not "pending on direct review" when *Alleyne* was issued. *Schriro*, 124 S.Ct. at 2522. We cannot ignore these facts and apply *Alleyne* on collateral review simply because Appellant "has continually remained in the appellate process since his conviction." Appellant's Brief at 101. Consequently, Appellant has not demonstrated that he is entitled to retroactive application of *Alleyne*.

In his final issue, "Appellant alleges that [t]rial [c]ounsel was ineffective for not objecting to particular instances of prosecutorial misconduct as well as not moving for dismissal due to the cumulative nature and effect of [that] misconduct." Appellant's Brief at 102. In support of this claim, Appellant essentially rehashes the same arguments proffered in several of his previous issues. Namely, Appellant asserts that (1) the Commonwealth did not properly specify the dates of Appellant's offenses in the criminal information; (2) the Commonwealth committed a *Brady* violation with regard to an agreement with Charles Haralson; (3) the Commonwealth improperly handled Mr. Haralson's perjured grand jury testimony; and (4) the Commonwealth impermissibly elicited testimony from Agent Feathers that Appellant was 'a major dealer.' Appellant reiterates that trial counsel was ineffective for failing "to adequately address these issues…." *Id.* at 104. We thoroughly addressed each of these claims, *infra*, and concluded that counsel did not act ineffectively. Accordingly, Appellant's final issue is meritless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2014